UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LAMONTE B. JOHNSON and HOLLY L. BRAMAN,
individually and as parents and natural guardians of
A.J.J. and A.J., minors,

                     Plaintiffs,                 1:14-CV-0817(GTS/TWD)

v.

CITY OF TROY; and JUSTIN ASHE, ISAAC
BERTOS, RUSSELL CLEMENTS, FITZGERALD,
NICHOLAS LAVIANO, MICHAEL MEROLA, and
CHRISTOPHER RASMUSSEN, as City of Troy
Police Officers, individually, and/or as agents,
servants, and/or employees of the City of Troy,

                     Defendants.
_____

APPEARANCES:                          OF COUNSEL:

THE KINDLON LAW FIRM, PLLC        TERENCE L. KINDLON, ESQ.
  Counsel for Plaintiffs              GENNARO D. CALABRESE, ESQ.
74 Chapel Street
Albany, NY 12207

PATTISON, SAMPSON, GINSBERG      DONALD J. SHANLEY, ESQ.
& GRIFFIN, P.C.
  Counsel for Defendant Bertos
22 First Street
P.O. Box 208
Troy, NY 12181-0208

HON. KEVIN P. GLASHEEN           RICHARD T. MORRISSEY, ESQ.
Corporation Counsel of City of Troy     Deputy Corporation Counsel
  Counsel for all Defendants except Bertos
1776 6th Avenue
Troy, NY 12180

GLENN T. SUDDABY, Chief United States District Judge

<u>**DECISION and ORDER**</u>

Currently before the Court, in this civil rights action filed by Lamonte and Holly Braman and their two minor children A.J.J. and A.J. ("Plaintiffs") against the City of Troy, City Police Officer Isaac Bertos ("Defendant Bertos") and six other city police officers ("Remaining Defendants"), are the following three motions: (1) a motion for partial summary judgment by Defendant Bertos seeking the dismissal of the claims asserted by Plaintiff Braman against him ("First Motion for Partial Summary Judgment"); (2) a motion for partial summary judgment by Defendant Bertos seeking the dismissal of the claims asserted by Plaintiffs A.J.J. and A.J. against him ("Second Motion for Partial Summary Judgment"); and (3) a motion for summary judgment by the Remaining Defendants seeking the dismissal of all claims against them. (Dkt. Nos. 34, 41, 43.) For the reasons set forth below, Defendant Bertos' two motions are granted, and the Remaining Defendants' motion is granted in part and denied in part.

## I.    RELEVANT BACKGROUND

### A.    Summary of Plaintiffs' Complaint

Generally, liberally construed, Plaintiffs' Complaint alleges as follows. (Dkt. No. 1.) At or about 10:27 p.m. on or about December 16, 2011, Defendant Police Officers unlawfully stopped the car that Plaintiff Johnson was driving, and in which the remaining Plaintiffs were passengers, at or near 4th Street and Ferry Street in the City of Troy. (*Id*.) Defendant Police Officers unlawfully ordered Plaintiff Johnson out of the car and used excessive force against him. (*Id*.) When Plaintiff Braman exited the car out of concern for Johnson's safety, they used excessive force against her and unlawfully detained her. (*Id*.) When Plaintiff A.J.J., age eleven, exited the car, they used excessive force against her and unlawfully detained her. (*Id*.) As

Plaintiff A.J., age five, remained in the car, one of the Defendant Police Officers kicked the door and yelled to intimidate A.J. (*Id.*) Defendant Police Officers then arrested Plaintiffs Johnson and Braman without probable cause and/or failed to intervene to stop the assault and false arrest. (*Id.*) Defendant Police Officers subsequently charged Plaintiff Johnson with Criminal Possession of a Weapon in the Fourth Degree, Resisting Arrest, Obstructing Governmental Administration in the Second Degree, and Unreasonable Speed; and they charged Plaintiff Braman with Criminal Possession of a Controlled Substance in the Third Degree, Criminal Possession of a Controlled Substance in the Seventh Degree, Possession of Controlled Substances by Ultimate Users Original Container, and Resisting Arrest. (*Id.*) Thereafter, during the pre-trial stages of the prosecutions, Defendant Police Officers deliberately concealed from the court, district attorney and defense counsel the fact that the "information" upon which they based criminal charges against Plaintiffs Johnson and Braman was false. (*Id.*) The charges against Plaintiff Braman were dismissed in April 2012, and the charges against Plaintiff Johnson were dismissed in October 2013. (Dkt. No. 1.)

Generally, based on these factual allegations, Plaintiffs' Complaint asserts the following five claims against Defendants: (1) a claim that Defendants subjected Plaintiffs to excessive force in violation of their rights under the Fourth Amendment; (2) a claim that Defendants subjected Plaintiffs Johnson and Braman to malicious prosecution in violation of their rights under the Fourth Amendment; (3) a claim that Defendants subjected Plaintiffs Johnson and Braman to unlawful arrest in violation of their rights under the Fourth Amendment; (4) a claim that Defendants subjected Plaintiffs to unlawful imprisonment in violation of their rights under the Fourth Amendment; and (5) a claim that Defendants denied Plaintiffs substantive due process in violation of their rights under the Fifth and Fourteenth Amendments. (*Id.*)

**B.**     **Summary of Parties' Arguments on Defendants' Motions**

      **1.**     **Arguments on Defendant Bertos' First Motion for Partial Summary Judgment**

Generally, in his memorandum of law in chief, Defendant Bertos argues that Plaintiff Braman's claims against him should be dismissed for the following five reasons: (1) her excessive force claim against him should be dismissed because (a) the uncontradicted record evidence (including Braman's interrogatory responses and deposition testimony and Bertos' deposition testimony) establishes that Bertos had no physical contact with Braman during the incident in question, and (b) even if some force occurred, it could not have been excessive, based on the allegations in the Complaint (which acknowledge that Braman attempted to interfere with Defendant Police Officers' attempt to subdue her husband); (2) her malicious prosecution claim against him should be dismissed because (a) the uncontradicted record evidence (including the Troy Police Department's records and Braman's interrogatory responses) establishes that he did not prepare, sign and file the accusatory information that initiated the prosecution against her, and (b) in any event, Braman cannot establish that the criminal prosecution against her terminated in her favor (instead merely being dismissed due to the facial insufficiency of the allegations in the accusatory instrument); (3) her unlawful arrest claim against him should be dismissed because it is duplicative of her unlawful imprisonment claim; (4) her unlawful imprisonment claim against him should be dismissed because (a) the uncontradicted record evidence (including the arrest report, Braman's interrogatory responses and deposition testimony, and Bertos' deposition testimony) establishes that Bertos did not arrest (or imprison) Braman during the incident in question, and (b) in any event, probable cause existed to arrest her due to her possession of hydrocodone pills without a doctor's prescription during the time in

question; and (5) her substantive due process claim against him should be dismissed because (a) in her interrogatory responses she identified no manner in which he denied her substantive due process and (b) in any event, based on the record evidence he deprived her of no liberty interest, property interest or due process of law. (Dkt. No. 34, Attach. 11 [Bertos' Memo. of Law].)

Generally, in their opposition memorandum of law, Plaintiffs argues that Plaintiff Braman's excessive force claim against Defendant Bertos should not be dismissed because admissible record evidence exists (specifically, the affidavits of Braman and Bertos) from which a rational fact-finder could conclude that Bertos knew of, had a realistic opportunity to prevent, but failed to prevent, the excessive forced used by Officer Justin Ashe against Braman. (Dkt. No. 37, Attach. 1 [Plfs.' Opp'n Memo. of Law].) Along with their opposition memorandum of law, Plaintiffs submit the affidavit of Plaintiff Braman, in which she, *inter alia*, states that she "wish[es] to withdraw [her] causes of action for malicious prosecution, unlawful arrest, unlawful imprisonment, and denial of substantive due process against Defendant Bertos." (Dkt. No. 37, Attach. 3, at ¶ 7 [Braman Affid.].)

Generally, in his reply affidavit,[1] Defendant Bertos asserts three arguments: (1) after reading the statement of Plaintiffs' counsel in his affidavit that he was never provided with a

_____

[1]     Defense counsel is respectfully reminded, because his reply affidavit violates two of the Court's Local Rules of Practice, he should not again file such a reply affidavit again in this Court. *See* N.D.N.Y. L.R. 7.1(a)(2) (prohibiting affidavits from containing legal arguments); N.D.N.Y. L.R. 7.1(a)(1) (requiring legal arguments to be contained in memoranda of law that contain tables of contents). Of course, Plaintiffs' counsel is similarly reminded that, not only must his affidavit be based on personal knowledge (as defense counsel points out) but it may not contain either a request for relief or legal argument, which (in addition to possibly causing the page-limit on his opposition memorandum of law to be exceeded) may cause the request and/or argument to be overlooked by opposing counsel and/or the Court. (*Compare* Dkt. No. 37, at ¶ 5 [Affid. of Plfs.' Counsel, arguing that Plf. Braman's deposition transcript should be excluded] with Dkt. No. 37, Attach. 1 [Plfs.' Opp'n Memo. of Law, failing to make that argument].)

copy of Plaintiff Braman's deposition transcript for review and correction (and that, as a result, the Court should not consider that transcript), defense counsel provided such a copy to Plaintiffs' counsel and offered to consent to additional time to file a further opposition; (2) the remaining portions of the affidavit of Plaintiffs' counsel possess no evidentiary value because they are based on a lack of personal knowledge of the facts giving rise to this action; and (3) contrary to Plaintiffs' representation, (a) Braman's affidavit nowhere states that Bertos was aware of any excessive force used against Braman and had an opportunity to intervene, (b) in his deposition, Bertos testified that he does not believe he observed any physical contact between Braman and Ashe because Bertos' focus was on Plaintiff Johnson, and (c) in her deposition, Braman testified that, at the time Ashe used excessive force against her, Bertos was involved with Johnson. (Dkt. No. 38 [Def. Bertos' Reply Affid.].)

### 2. Arguments on Defendant Bertos' Second Motion for Partial Summary Judgment

Generally, in his memorandum of law in chief, Defendant Bertos argues that the claims of Plaintiffs A.J.J. and A.J. against him should be dismissed for the following three reasons: (1) all claims for false arrest (or unlawful imprisonment) and excessive force by A.J.J. and A.J. should be dismissed because the uncontradicted record evidence establishes that Bertos neither arrested nor used any force against A.J.J. and A.J.; (2) any claims for intentional infliction of emotional distress by A.J.J. and A.J. should be dismissed because the record (which includes the interrogatory responses and deposition testimony of A.J.J. and A.J.) contains no admissible record evidence from which a rational fact-finder could conclude that Bertos inflicted on A.J.J. or A.J. conduct that was extreme and outrageous; and (3) in any event, Bertos is protected from liability as a matter of law by the doctrine of qualified immunity because, based on the current

record, it is undisputed that the traffic stop conducted by Bertos did not violate a clearly established right of either A.J.J. or A.J. of which a reasonable officer would have known. (Dkt. No. 41, Attach. 9 [Def. Bertos' Memo. of Law].)

Generally, in their opposition memorandum of law, Plaintiffs assert three arguments: (1) Plaintiff A.J.J.'s excessive force claim should not be dismissed because admissible evidence exists from which a rational fact-finder could conclude that Defendant Bertos had a realistic opportunity to intervene in and prevent the excessive force that was used against A.J.J. by another police officer; (2) no intentional infliction of emotional distress claims has been brought against Defendant Bertos; and (3) Bertos is not protected from liability as a matter of law by the doctrine of qualified immunity because admissible evidence exists from which a rational fact-finder could conclude that, during the time in question, A.J.J. had a clearly established right to be free from the use of excessive force from another police officer, Bertos could have intervened in that use of force (given that he "was present on [the] scene at or near the location where this occurred"), but he failed to do so. (Dkt. No. 51, Attach. 2 [Plfs.' Opp'n Memo. of Law].)

Generally, in his reply affidavit, Defendant Bertos asserts three arguments: (1) from Plaintiffs' opposition papers, it is clear that Plaintiff A.J. has not opposed Defendant Bertos' motion (and thus the claims asserted by A.J. against Bertos must be dismissed); (2) in Plaintiffs' opposition papers, they acknowledge that no physical contact occurred between Bertos and Plaintiff A.J.J.; and (3) conspicuously absent from Plaintiffs' opposition papers is any evidence that, despite his presence at or near the location in question, Bertos had an opportunity to intervene to prevent the force immediately used against A.J.J. after she suddenly emerged from the car and attempted to pull a police officer away from Plaintiff Braman. (Dkt. No. 53 [Def. Bertos' Reply Affid.].)

### 3. Arguments on Remaining Defendants' Motion for Summary Judgment

Generally, in their memorandum of law in chief, the Remaining Defendants asserts the following six arguments: (1) while Defendants Laviano, Ashe and Clements recognize that the sworn contentions of Plaintiffs Johnson and Braman likely will create genuine disputes of material fact regarding the appropriateness of the force used by those Defendants, they do not concede that genuine disputes of material fact exist regarding the remaining claims against those Defendants, and Defendants Merola, Rasmussen and Fitzgerald (who were not involved in any uses of force and whose limited involvement in the prosecution of Plaintiff Braman was supported by probable cause) do not concede that genuine disputes of material fact exist regarding any claims against them; (2) Plaintiffs have neither pleaded nor established a municipal liability claim against Defendant City of Troy pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), because they have neither pleaded nor established an official policy or custom that caused Plaintiffs to be subjected to a denial of a constitutional right, thus precluding Plaintiffs' claims against the City of Troy as well as their claims against the individual Defendants in their official capacities; (3) the initial seizure of Plaintiffs by Defendants Leviano and Bertos (through a traffic stop) was reasonable for purposes of the Fourth Amendment, because police officers are constitutionally privileged to stop a vehicle that is reasonably suspected to be violating the vehicle and traffic law (including N.Y. Vehicle and Traffic Law § 1180[e]), to detain its occupants for a reasonable time, and to direct those occupants to remain inside the vehicle or to exit the vehicle as a precautionary measure (without reasonable suspicion that the passenger poses a safety risk); (4) Plaintiffs Johnson's and Braman's claims of false imprisonment should be dismissed as duplicative of their claims of

false arrest, Plaintiffs Johnson's and Braman's claims of false arrest against Defendants should be dismissed as precluded by the undisputed material fact that probable cause existed to arrest and prosecute those Plaintiffs (for Obstructing Governmental Administration, possession of a contraband weapon and possession of narcotics), and Plaintiffs Johnson's and Braman's claims of malicious prosecution against Defendants should be dismissed for the same reason and for the lack of admissible record evidence from which a rational fact-finder could conclude that the charges either were founded in malice or terminated in Plaintiffs' favor; (5) Plaintiffs' substantive due process claims should be dismissed as duplicative of their claims of excessive force, false arrest and malicious prosecution; and (6) the Remaining Defendants are protected from liability as a matter of law by the doctrine of qualified immunity because, based on the current record, it is undisputed that their actions did not violate a clearly established right of any Plaintiff of which a reasonable officer would have known. (Dkt. No. 48 [Remaining Defs.' Amended Memo. of Law].)

Generally, in their opposition memorandum of law, Plaintiffs assert four arguments: (1) the excessive force claims by Plaintiffs Johnson and Braman against Defendants Laviano, Ashe and Clements present genuine disputes of material fact, because Plaintiffs' testimony is in clear contradiction to the testimony of those Defendants with regard to numerous material issues, including whether Plaintiffs became combative, whether they resisted arrest, whether those Defendants' use of force was necessary to effect an arrest, the amount of force used, and whether Plaintiffs posed an immediate threat to the safety of Defendants or others; (2) the false arrest and false imprisonment claims by Plaintiffs Johnson and Braman against Defendants Ashe, Rasmussen and Laviano present genuine disputes of material fact with regard to whether probable cause existed to arrest Plaintiffs, because Plaintiffs' testimony is in clear contradiction

to the testimony of those Defendants with regard to numerous material issues, including whether Plaintiff Braman attempted to prevent Defendant Ashe from arresting Plaintiff Johnson, whether Ashe was arresting Johnson, whether an arrest of Johnson was authorized, whether the controlled substances (upon which the possession against Braman were based) was found only after Braman was unlawfully arrested by Ashe, whether Johnson interfered with a lawfully conducted investigation, whether Johnson became combative, and whether the weapon was found only after Bertos and Laviano unlawfully arrested Johnson; (3) the malicious prosecution claims by Plaintiffs Johnson and Braman present genuine disputes of material fact, because the record contains numerous material issues of fact, including whether the prosecutions were commenced without probable cause, whether they were commenced with malice, and whether they terminated in Plaintiffs' favor; and (4) the Remaining Defendants are not protected from liability as a matter of law by the doctrine of qualified immunity because, based on the current record, a genuine dispute of material fact exists regarding whether their actions violated a clearly established right of Plaintiffs of which a reasonable officer would have known. (Dkt. No. 54, Attach. 5 [Plfs.' Opp'n Memo. of Law].)

Generally, in their reply memorandum of law, the Remaining Defendants assert ten arguments: (1) all claims against Defendant City of Troy (and all claims against the individual Defendants other than Bertos in their official capacities) must be dismissed, because, in their opposition memorandum of law, Plaintiffs failed to oppose Defendants' challenge to those claims; (2) Plaintiffs' substantive due process claims against the Remaining Defendants must be dismissed, because, again, in their opposition memorandum of law, Plaintiffs failed to oppose

Defendants' challenge to those claims;[2] (3) Plaintiffs have effectively withdrawn Plaintiffs A.J.J.'s and A.J.'s claims for unlawful arrest and malicious prosecution by expressly stating that those two Plaintiffs have brought claims for only excessive force, unlawful imprisonment and denial of substantive due process; (4) the claims of excessive force asserted by Plaintiffs A.J.J. and A.J. against the Remaining Defendants must be dismissed, because Plaintiffs have admitted in their opposition papers that none of the individual Defendants used any force at all against Plaintiffs A.J.J. and A.J., and Plaintiffs have failed to even argue (in their opposition memorandum of law) that their claims should not be dismissed; (5) Plaintiffs A.J.J.'s and A.J.'s claims for unlawful imprisonment against the Remaining Defendants must be dismissed, because (a) Plaintiffs have not argued in their opposition memorandum of law that these claims should survive the Remaining Defendants' motion, and (b) in any event, A.J.J.'s "imprisonment" in the police car, and A.J.'s "imprisonment" in Plaintiff Johnson's vehicle, were part of a temporary detention due to a traffic stop, which Plaintiffs concede was lawful based on the judgment of Defendants Bertos and Laviano; (6) Plaintiff Braman's excessive force claim against all of the Remaining Defendants (except Ashe) must be dismissed, because (a) she has admitted that no force was used against her by Defendants Clements, Laviano, Rasmussen, Merola and Fitzgerald, (b) she does not cite any admissible record evidence establishing any reasonable opportunity by those Defendants to perceive that her rights were being violated or to intervene in

---

[2]    While the Remaining Defendants argue that Plaintiffs' substantive due process claims must be dismissed "as to all Defendants," the Court construes those words as meaning "as to all *Remaining* Defendants," because (1) counsel for the Remaining Defendants acknowledges in the Remaining Defendants' Notice of Motion that he does not represent Defendant Bertos (Dkt. No. 43, at 1), and (2) a defendant cannot file a motion on behalf of a separately represented defendant. The Court renders the same construction with regard to the Remaining Defendants' third, fourth, fifth, sixth, seventh, ninth and tenth arguments.

such a violation, and (c) indeed, admissible record evidence exists establishing that Rasmussen, Merola and Fitzgerald arrived late to the scene and Clements and Laviano were focused on subduing Plaintiff Johnson; (7) Plaintiff Braman's claims for unlawful arrest, unlawful imprisonment and malicious prosecution against all of the Remaining Defendants (except her claim of malicious prosecution against Defendant Ashe with regard to the charge of Resisting Arrest) must be dismissed, because (a) Plaintiffs admit that Defendants Clements, Laviano and Fitzgerald had no involvement with Braman's arrest, confinement and prosecution, (b) Braman's claim of unlawful arrest is duplicative of her claim of unlawful imprisonment, (c) probable cause existed to arrest Braman for the illegal possession of the narcotic hydrocodone without a prescription, which was discovered pursuant to an unchallenged search of Plaintiff's Johnson's car and her bag conducted as part of her temporary detention before her arrest for Resisting Arrest, and (d) Merola and Rasmussen merely assisted Ashe with drafting and filing accusatory instruments against Braman (which were dismissed for mere pleading errors); (8) Plaintiff Johnson's excessive force claim against Defendants Rasmussen, Merola and Fitzgerald must be dismissed, because, in their opposition memorandum of law, Plaintiffs failed to oppose Defendants' challenge to that claim;

(9) Plaintiff Johnson's claims for unlawful arrest, unlawful imprisonment and malicious prosecution against all of the Remaining Defendants (except his claim of malicious prosecution against Defendant Laviano) must be dismissed, because (a) Plaintiffs admit in their opposition papers that Defendants Rasmussen, Merola and Fitzgerald had no involvement in the arrest, confinement and prosecution of Johnson, who was principally arrested by Defendant Bertos, (b) Defendant Ashe only briefly assisted Bertos in restraining Johnson before Ashe's attention was diverted to Plaintiff Braman, (c) while Ashe authored the accusatory instrument charging

Johnson with Criminal Possession of a Weapon in the Fourth Degree, Johnson has admitted that possession, and probable cause is absolute defense to the above-described claims, (d) Defendant Clements' involvement was limited to initially assisting in the restraining of Johnson, and (e) while Defendant Laviano arrested, detained and prosecuted Johnson, all of those actions were supported by probable cause to charge Johnson with Criminal Possession of a Weapon in the Fourth Degree, arising from the discovery of metal knuckles in his car, pursuant to an unchallenged search conducted during the temporary detention; and (10) the Remaining Defendants are protected from liability as a matter of law by the doctrine of qualified immunity (even on the claims excepted above), because, *inter alia*, there is no admissible record evidence from which a rational fact-finder could conclude that, at the time they entered the fray, Defendants Laviano and Clements should have known that Plaintiff Johnson did not start the physical confrontation at the time. (Dkt. No. 58 [Remaining Defs.' Reply Memo. of Law].)

C.   **Undisputed Statements of Material Fact**

1.   **Statement of Facts on Defendant Bertos' First Motion for Partial Summary Judgment**

Unless otherwise noted, the following facts were asserted and supported by Defendant Bertos in his statement of material facts and admitted or denied without a supporting record citation by Plaintiffs in their response thereto. (*Compar*e Dkt. No. 34, Attach. 10 [Def. Bertos' Rule 7.1 Statement] *with* Dkt. No. 37, Attach. 2 [Plfs.' Rule 7.1 Response].)

1.   On and prior to December 16, 2011, Holly Braman ("Braman") was a natural person residing in the Village and Town of Green Island in the County of Albany, New York.

2.   On and prior to December 16, 2011, Lamonte Johnson ("Johnson") was a natural person residing in the Village and Town of Green Island in the County of Albany, New York.

3.     On and prior to December 16, 2011, A.J.J. and A.J. were natural persons residing in the Village and Town of Green Island in the County of Albany, New York.

4.     On and prior to December 16, 2011, Isaac Bertos ("Bertos") was a City of Troy police officer and was acting in the scope of his employment as a patrol officer on duty.

5.     On December 16, 2011, at about 10:27 p.m., Johnson was driving north on Fourth Street in the City of Troy, with Braman, A.J.J. and A.J. as passengers in his vehicle.

6.     At or near the intersection of Fourth Street and Ferry Street, the vehicle being driven by Johnson was stopped by Bertos, and Johnson was charged with operating his vehicle with unreasonable speed.

7.     During this traffic stop, a confrontation occurred between Johnson, Bertos, and Police Officer Justin Ashe ("Ashe"), who arrived at the scene as a "backup" to the traffic stop; the confrontation was followed by physical contact between Johnson and Bertos.[3]

8.     During the physical contact, Braman exited the vehicle and became involved in the matter.[4]

9.     Braman claims that Ashe then grabbed the shoulders and hood of her jacket, threw her to the ground, dragged her by her jacket across the street, handcuffed her, and placed her in a police patrol car.

_____

[3]     (*Compare* Dkt. No. 34, Attach. 10, at ¶ 7 [Def. Bertos' Rule 7.1 Statement, asserting facts and supporting them with accurate record citations] *with* Dkt. No. 37, Attach. 2, at ¶ 7 [Plfs.' Rule 7.1 Response, denying merely that the confrontation was followed by a "scuffle" as opposed to being followed by a "physical assault[] by numerous police officers"].)

[4]     (*Compare* Dkt. No. 34, Attach. 10, at ¶ 8 [Def. Bertos' Rule 7.1 Statement, asserting fact and supporting it with accurate record citation] *with* Dkt. No. 37, Attach. 2, at ¶ 8 [Plfs.' Rule 7.1 Response, denying merely that the physical contact constituted a "scuffle" as opposed to a "physical assault[] by numerous police officers"].)

10. At the time of Braman's arrest, she was found to be in possession of a quantity of hydrocodone tablets, a controlled substance, and she admitted that she did not have a doctor's prescription to possess them.

11. Braman was arrested by Ashe and charged with four offenses: (1) Criminal Possession of a Controlled Substance in the Third Degree in violation of New York Penal Law ("N.Y. Penal Law") § 220.16(1); (2) Resisting Arrest in violation of N.Y. Penal Law § 205.30; (3) Criminal Possession of a Controlled Substance in the Seventh Degree in violation of N.Y. Penal Law § 220.03; and (4) Possession of Controlled Substances by Ultimate Users (Outside of the) Original Container in violation of New York Public Health Law § 3345.

12. On April 24, 2012, all of these criminal charges were dismissed by the Troy Police Court Judge by reason of the facial insufficiency of the accusatory instruments.[5]

13. At no time on December 16, 2011, was there any physical contact between Braman and Bertos.

14. Bertos did not file any of the criminal charges brought against Braman.

15. When asked in an interrogatory how and in what manner she was denied her right to substantive due process by Bertos, Braman referred defense counsel to the allegation of her Complaint and made no further reply.

---

[5] (*Compare* Dkt. No. 34, Attach. 10, at ¶ 12 [Def. Bertos' Rule 7.1 Statement, asserting fact and supporting it with accurate record citations] *with* Dkt. No. 37, Attach. 2, at ¶ 12 [Plfs.' Rule 7.1 Response, asserting that the dismissal occurred "on or before April 24, 2012," but not providing a record citation in support of that assertion].)

16.     At all times during the events on December 16, 2011, Bertos was a police officer acting in the scope of his employment and in the performance of his duties.[6]

### 2.     Statement of Facts on Defendant Bertos' Second Motion for Partial Summary Judgment

Unless otherwise noted, the following facts were asserted and supported by Defendant Bertos in his statement of material facts and admitted or denied without a supporting record citation by Plaintiffs in their response thereto. (*Compare* Dkt. No. 42 [Def. Bertos' Rule 7.1 Statement] *with* Dkt. No. 51, Attach. 2 [Plfs.' Rule 7.1 Response].)

1.     On and prior to December 16, 2011, Plaintiffs A.J.J. and A.J. were natural persons residing in the Village and Town of Green Island in the County of Albany, New York.

2.     On and prior to December 16, 2011, Lamonte Johnson ("Johnson") was a natural person residing in the Village and Town of Green Island in the County of Albany, New York.

3.     On and prior to December 16, 2011, Holly Braman ("Braman") was a natural person residing in the Village and Town of Green Island in the County of Albany, New York.

4.     On and prior to December 16, 2011, Isaac Bertos ("Bertos") was a City of Troy police officer and was acting in the scope of his employment as a patrol officer on duty.

5.     On December 16, 2011, at about 10:27 p.m., Johnson was driving north on Fourth Street in the City of Troy, with Braman, A.J.J. and A.J. as passengers in his vehicle.

6.     At or near the intersection of Fourth Street and Ferry Street, the vehicle being driven by Johnson was stopped by Bertos, and Johnson was charged with operating his vehicle with unreasonable speed.

---

[6]     (*Compare* Dkt. No. 34, Attach. 10, at ¶ 16 [Def. Bertos' Rule 7.1 Statement, supporting above-stated fact with accurate record citation] *with* Dkt. No. 37, Attach. 2, at ¶ 16 [Plfs.' Rule 7.1 Response, denying above-stated fact but not providing a specific and accurate record citation in support of that denial].)

7.      During this traffic stop, a confrontation occurred between Johnson, Bertos, and Police Officer Justin Ashe ("Ashe"), who arrived at the scene as a "backup" to the traffic stop; the confrontation was followed by physical contact between Johnson and Bertos.[7]

8.      During the physical contact, Braman exited the vehicle and became involved in the matter.[8]

9.      Plaintiff A.J.J. claims that a policeman handcuffed her and pushed her into the rear seat of a police vehicle.

10.     Plaintiff A.J.J. claims that this same policeman struck her in the thigh with his baton.

11.     Plaintiff A.J.J. described this policeman as being baldheaded and dressed in civilian clothing but could not identify him by name.

12.     Bertos is not bald and on the night in question he was dressed in his regular police uniform.

13.     At no time did Bertos have any physical contact of any nature with Plaintiff A.J.J.

14.     During the events described in the Complaint, Plaintiff A.J. remained in the rear seat of vehicle that Johnson had been driving.

---

[7]      (*Compare* Dkt. No. 42, at ¶ 7 [Def. Bertos' Rule 7.1 Statement, asserting facts and supporting them with accurate record citation] *and* Dkt. No. 34, Attach. 9, at ¶¶ 5, 8 [Bertos Affid., further supporting factual assertions] *with* Dkt. No. 51, Attach. 2, at ¶ 7 [Plfs.' Rule 7.1 Response, denying that the confrontation was followed by a "scuffle" as opposed to being followed by a "physical assault[] by numerous police officers"].)

[8]      (*Compare* Dkt. No. 42, at ¶ 8 [Def. Bertos' Rule 7.1 Statement, asserting fact and supporting it with accurate record citations] *with* Dkt. No. 51, Attach. 2, at ¶ 8 [Plfs.' Rule 7.1 Response, denying merely that the physical contact constituted a "scuffle" as opposed to a "physical assault[] by numerous police officers"].)

15.     Plaintiff A.J. claimed that a police officer, whom he described as a '"baldheaded dude," kicked the door of Johnson's vehicle.

16.     Bertos did not kick the door of Johnson's vehicle nor did he yell anything at the occupants in the backseat of that vehicle.

17.     At no time on December 16, 2011, was there any physical contact of any nature between Bertos and Plaintiff A.J.

18.     At no time did Plaintiff A.J. sustain any physical injuries as the result of the happening of the events complained of.

19.     At all times during the events on December 16, 2011, Bertos was a police officer acting in the scope of his employment and in the performance of his duties.[9]

20.     Johnson and Braman were arrested and removed from the scene, and A.J.J. and A.J. were conveyed to the home of their grandmother.

### 3.     Statement of Facts on Remaining Defendants' Motion for Summary Judgment

Unless otherwise noted, the following facts were asserted and supported by the Remaining Defendants in their statement of material facts and admitted or denied without a supporting record citation by Plaintiffs in their response thereto.  (*Compar*e Dkt. No. 47 [Remaining Defs.' Amended Rule 7.1 Statement] *with* Dkt. No. 54, Attach. 6 [Plfs.' Rule 7.1 Response].)

---

[9]     (*Compar*e Dkt. No. 42, at ¶ 19 [Def. Bertos' Rule 7.1 Statement, supporting above-stated fact with accurate record citation] *with* Dkt. No. 51, Attach. 2, at ¶ 19 [Plfs.' Rule 7.1 Response, denying above-stated fact but not providing a specific and accurate record citation in support of that denial].)

<u>Traffic Stop</u>

1.       In the late evening hours of 10:27 p.m. on December 16, 2011, Isaac Bertos
("Bertos") and Nicholas Laviano ("Laviano"), members of the uniformed Patrol Division of the
Troy Police Department, were in their patrol car on Liberty Street facing east when they
observed a Jeep Cherokee ("the vehicle") traveling north on Fourth Street at a rate of speed that,
in their judgment, they deemed to be unreasonable and imprudent under the circumstances.[10]

2.       The vehicle was being driven by Lamonte Johnson ("Johnson"), with Holly
Braman ("Braman") in the front passenger seat and their children, A.J.J. and A.J., in the back
seat.

3.       Bertos and Laviano pursued the vehicle they had observed, activating their
emergency lights.

4.       Johnson's vehicle stopped on the right hand side of Fourth Street, north of the
Ferry and Fourth Streets intersection, and the officers parked their patrol car behind it.

5.       After exiting their patrol car, Officer Bertos approached the driver's window of
the vehicle, while Laviano approached on the passenger side; initially, the vehicle's driver and
passengers remained inside the vehicle.

6.       Bertos advised the occupants of the vehicle that it had been stopped because of its
speed.

7.       As is customary for Troy police officers, other available officers began arriving
on the scene to "back up" Bertos and Laviano if needed.

---

[10]       (*Compar*e Dkt. No. 47, at ¶ 1 [Remaining Defs.' Amended Rule 7.1 Statement,
asserting fact and supporting it with accurate record citations] *with* Dkt. No. 54, Attach. 6, at ¶ 1
[Plfs.' Rule 7.1 Response, failing to cite record evidence controverting, and even failing to deny,
that Bertos and Laviano deemed the speed to be unreasonable and imprudent in their judgment].)

<u>Confrontations Outside of Vehicle</u>

8.     As directed by Bertos, Johnson exited his vehicle; and then a physical

confrontation with police officers ensued.[11]

9.     The confrontation initially involved Johnson, Bertos and Ashe.

10.     Braman exited the driver's door of the vehicle and became involved in a separate

physical confrontation with Ashe, while Laviano and Clements came around the back of the

vehicle to assist Bertos with Johnson.[12]

11.     Thereafter, eleven-year-old A.J.J. exited the driver's door of the vehicle and tried

to pull Ashe from behind while he was scuffling with her mother.

12.     Ashe did nothing to A.J.J. when she did that.

---

[11]     (*Compare* Dkt. No. 47, at ¶ 8 [Remaining Defs.' Amended Rule 7.1 Statement, asserting facts and supporting them with accurate record citations] *with* Dkt. No. 54, Attach. 6, at ¶ 8 [Plfs.' Rule 7.1 Response, denying merely that the physical confrontation consisted of a "scuffle" rather than a "physical assault[] by numerous police officers"].)

[12]     (*Compare* Dkt. No. 47, at ¶ 10 [Remaining Defs.' Amended Rule 7.1 Statement, asserting facts and supporting them with accurate record citations] *with* Dkt. No. 54, Attach. 6, at ¶ 10 [Plfs.' Rule 7.1 Response, denying merely that Braman "physically assaulted" Ashe–a fact never asserted by the Remaining Defendants].)  A Rule 7.1 Response is not the means by which to dispute a possibly *implied* fact but the means by which to dispute an expressly *asserted* fact. *See* N.D.N.Y. L.R. 7.1(a)(3) ("The non-movant's responses shall . . . admit[] and/or deny[] each of the movant's *assertions* in matching numbered paragraphs.") (emphasis added); *see, e.g., Yetman v. Capital Dis. Trans. Auth.*, 12-CV-1670, 2015 WL 4508362, at *10 (N.D.N.Y. July 23, 2015) (Suddaby, J.) (citing authority for the point of law that the summary judgment procedure involves the disputation of asserted facts, not the disputation of implied facts); *cf. Baity v. Kralik*, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014) (noting that plaintiff's responses failed to comply with the court's local rules where "Plaintiff's purported denials . . . improperly interject arguments and/or immaterial facts in response to facts asserted by Defendants, often speaking past Defendants' asserted facts without specifically controverting those same facts"); *Goldstick v. The Hartford, Inc.*, 00-CV-8577, 2002 WL 1906029, at *1 (S.D.N.Y. Aug. 19, 2002) (striking plaintiff's Rule 56.1 Statement, in part, because plaintiff added "argumentative and often lengthy narrative in almost every case the object of which is to 'spin' the impact of the admissions plaintiff has been compelled to make"). To the extent that a non-movant desires to set forth any additional material facts that he contends are in dispute, he or she is required by Local Rule 7.1(a)(3) to do so in separately numbered paragraphs.

13.     Another officer, unnamed but described as bald and dressed in civilian clothes, assisted Ashe by pulling A.J.J. off of him, handcuffing her, and placing her in a patrol car.

14.     A.J.J. claims that the same bald officer struck her in the thigh with a black stick.

15.     Five-year-old A.J. remained alone in the vehicle during these events.

16.     A.J. claims that one police officer, an unnamed "bald headed dude" in a police uniform, kicked the vehicle he was in and yelled at him.

17.     Apart from that, however, no police officer touched him or tried to hurt him in any way.

18.     Laviano was not bald and was dressed in his police uniform at the time and place of these events.

19.     Clements was not bald and was dressed in his police uniform at the time and place of these events.

20.     Ashe was not bald and was dressed in his police uniform at the time and place of these events.

21.     Merola was not bald and was dressed in his police uniform at the time and place of these events.

22.     Rasmussen was not bald and was dressed in his police uniform at the time and place of these events.

Actions Taken (and Not Taken) Against A.J.J.

23.     There is no evidence that anyone but a bald officer not in uniform used force against A.J.J.

24.     A.J.J. does not claim that any other officer used force against her.

25.     Laviano did not use any force at all against A.J.J.

26.     Except for the detention pursuant to the traffic stop, Laviano did not in any way arrest, imprison, or prosecute A.J.J.

27.     Clements did not use any force at all against A.J.J.

28.     Clements did not arrest, imprison, or prosecute A.J.J.

29.     Ashe did not use any force at all against A.J.J.

30.     Ashe did not arrest, imprison, or prosecute A.J.J.

31.     Rasmussen did not use any force at all against A.J.J.

32.     Rasmussen did not arrest, imprison, or prosecute A.J.J.

33.     Merola did not use any force at all against A.J.J.

34.     Merola did not arrest, imprison, or prosecute A.J.J.

35.     Fitzgerald did not use any force at all against A.J.J.

36.     Fitzgerald did not arrest, imprison, or prosecute A.J.J.

Actions Taken (and Not Taken) Against Braman

37.     Ashe admits using force against Holly Braman and arresting, detaining, and prosecuting her.[13]

38.     Braman's criminal charges ultimately were dismissed for pleading errors that made them facially insufficient, not on the actual merits.

39.     There is no evidence that any officer other than Ashe used any force against Braman.[14]

---

[13]     (*Compare* Dkt. No. 47, at ¶ 37 [Remaining Defs.' Amended Rule 7.1 Statement, asserting above-described facts and supporting them with accurate record citations] *with* Dkt. No. 54, Attach. 6, at ¶ 37 [Plfs.' Rule 7.1 Response, successfully denying merely the reasonableness of the use of force and the existence of probable cause].)

[14]     (*Compare* Dkt. No. 47, at ¶ 39 [Remaining Defs.' Amended Rule 7.1 Statement, asserting above-described facts and supporting them with accurate record citations] *with* Dkt.

40.     Braman does not claim that any officer except Ashe used force against her.

41.     At the time and place of these events, Braman was illegally in possession of (19) hydrocodone pills, a controlled substance, without a prescription.

42.     Laviano did not use any force at all against Braman.

43.     Except for the detention pursuant to the traffic stop, Laviano did not in any way arrest, imprison, or prosecute Braman.

44.     Clements did not use any force at all against Braman.

45.     Clements did not arrest, imprison, or prosecute Braman.

46.     Rasmussen did not use any force at all against Braman.

47.     Rasmussen did not arrest, imprison or prosecute Braman, except to the extent that he assisted arresting officer Ashe with drafting and filing accusatory instruments charging Braman with various offenses arising out of her unlawful possession of (19) hydrocodone pills, a controlled narcotic substance, which illegal possession she has admitted.

48.     Merola did not use any force at all against Braman.

49.     Merola did not arrest, imprison or prosecute Braman, except to the extent that he assisted arresting officer Ashe with drafting and filing accusatory instruments charging Braman with various offenses arising out of her unlawful possession of (19) hydrocodone pills, a controlled narcotic substance, which illegal possession she has admitted.

50.     Fitzgerald did not use any force at all against Braman.

51.     Fitzgerald did not arrest, imprison or prosecute Braman.

52.     Fitzgerald essentially did nothing at the scene.

---

No. 54, Attach. 6, at ¶ 39 [Plfs.' Rule 7.1 Response, failing to specifically deny above-described facts or to support such a denial with a citation to admissible record evidence controverting them].)

53.     Ashe admits using force against Johnson briefly when he briefly assisted Bertos before Braman entered the fray, but he did not otherwise arrest or detain Johnson.[15]

54.     Laviano admits using force against Johnson, and arresting, detaining and prosecuting him.[16]

55.     Clements admits using force against Johnson to restrain and detain and arrest him, but denies he was involved in the prosecution of Johnson.[17]

56.     At the time and place of these events, Johnson was illegally in possession of metal knuckles, a prohibited weapon under N.Y. Penal Law § 265.01, which makes possession of such weapon a class "A" misdemeanor.

57.     Johnson's criminal charges ultimately were dismissed due to the prosecution's failure to be ready within the statutory time period of N.Y. C.P.L. § 30.30, not on the actual merits.

58.     Rasmussen did not use any force at all against Johnson.

59.     Rasmussen did not arrest, imprison or prosecute Johnson.

---

[15]     (*Compare* Dkt. No. 47, at ¶ 53 [Remaining Defs.' Amended Rule 7.1 Statement, asserting above-described facts and supporting them with accurate record citations] *with* Dkt. No. 54, Attach. 6, at ¶ 53 [Plfs.' Rule 7.1 Response, successfully denying merely the reasonableness of the use of force and Ashe's lack of prosecution of Johnson].)

[16]     (*Compare* Dkt. No. 47, at ¶ 54 [Remaining Defs.' Amended Rule 7.1 Statement, asserting above-described facts and supporting them with accurate record citations] *with* Dkt. No. 54, Attach. 6, at ¶ 54 [Plfs.' Rule 7.1 Response, successfully denying merely the reasonableness of the use of force and the existence of probable cause].)

[17]     (*Compare* Dkt. No. 47, at ¶ 55 [Remaining Defs.' Amended Rule 7.1 Statement, asserting above-described facts and supporting them with accurate record citations] *with* Dkt. No. 54, Attach. 6, at ¶ 55 [Plfs.' Rule 7.1 Response, successfully denying merely the reasonableness of the use of force].)

60.     Merola did not use any force at all against Johnson.

61.     Merola did not arrest, imprison or prosecute Johnson.

62.     Fitzgerald did not use any force at all against Johnson.

63.     Fitzgerald did not arrest, imprison or prosecute Johnson.

Actions Taken (and Not Taken) Against A.J.

64.     Laviano did not use any force at all against A.J.

65.     Except for the detention pursuant to the traffic stop, Laviano did not in any way arrest, imprison or prosecute A.J.

66.     Clements did not use any force at all against A.J.

67.     Clements did not arrest, imprison or prosecute A.J.

68.     Ashe did not use any force at all against A.J..

69.     Ashe did not arrest, imprison or prosecute A.J.

70.     Rasmussen did not use any force at all against A.J.

71.     Rasmussen did not arrest, imprison or prosecute A.J..

72.     Merola did not use any force at all against A.J.

73.     Merola did not arrest, imprison, or prosecute A.J.

74.     Fitzgerald did not use any force at all against A.J.

75.     Fitzgerald did not arrest, imprison or prosecute A.J.

76.     No police officer forcibly touched A.J. or tried to hurt him.

## II.     GOVERNING LEGAL STANDARDS

### A.     Standard Governing Motion for Summary Judgment

Because the parties have demonstrated (in their memoranda of law) an accurate understanding of the legal standard governing motions for summary judgment, the Court will not

recite that well-known legal standard in this Decision and Order, but will direct the reader to the Court's recent decision in *Pitts v. Onondaga Cty. Sheriff's Dep't*, 04-CV-0828, 2009 WL 3165551, at *2-3 (N.D.N.Y. Sept. 29, 2009) (Suddaby, J.), which accurately recites that legal standard.

### B.    Standard Governing Unopposed Motions

In this District, when a non-movant fails to oppose a legal argument asserted by a movant, the movant's burden with regard to that argument is lightened, such that, in order to succeed on that argument, the movant need only show that the argument possess facial merit, which has appropriately been characterized as a "modest" burden.  *See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determined that the moving party has met to demonstrate entitlement to the relief requested therein . . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL2473509, at *2 & nn.2, 3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

Alternatively, the court can deem the challenged claim abandoned (regardless of the facial merit of the unresponded-to argument).  *See Jackson v. Fed. Exp.*, 766 F.3d 189, 197-98 (2d Cir. 2014) ("Where a partial response to a motion is made–i.e., referencing some claims or defenses but not others–a distinction between *pro se* and counseled responses is appropriate. In the case of a *pro se*, the district court should examine every claim or defense with a view to determining whether summary judgment is legally and factually appropriate. In contrast, in the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned. In all cases in which summary judgment is granted, the district court must provide an explanation sufficient to allow

appellate review. This explanation should, where appropriate, include a finding of abandonment of undefended claims or defenses.").

### C. Standard Governing Plaintiffs' Claims

Because the parties have demonstrated (in their memoranda of law) an accurate understanding of the relevant points of law contained in the legal standards governing Plaintiff's claims in this action, the Court will not recite, in their entirety, those legal standards in this Decision and Order, which (again) is intended primarily for review by the parties.

## III. ANALYSIS

### A. Defendant Bertos' First Motion for Partial Summary Judgment

After carefully considering the matter, the Court finds that Defendant Bertos' first motion for summary judgment should be granted for each of the reasons stated in his memorandum of law and reply affidavit, the Court's prior summary of which is hereby incorporated by reference in this part of its decision. *See, supra,* Part I.B.1. of this Decision and Order. To those reasons, the Court adds the following three points, which are intended to supplement and not supplant Defendant Bertos' reasons.

First, even if Plaintiffs' had not voluntarily withdrawn Plaintiff Braman's claims of malicious prosecution, unlawful arrest, unlawful imprisonment and denial of substantive due process against Defendant Bertos, the Court would have dismissed those claims (pursuant to the standard set forth above in Part II.B. of this Decision and Order), because the facially meritorious challenge to those claims has been unopposed by Plaintiffs.

Second, the Court denies Plaintiffs' request to exclude Plaintiff Braman's deposition transcript for each of the following three reasons: (a) the request and supporting argument were impermissibly contained in an affidavit and not a memorandum of law (*see, supra,* note 1 of this

Decision and Order); (b) Braman was subsequently given the opportunity to review and correct the deposition transcript and further oppose Defendant Bertos' motion, but failed to do so; and (c) Plaintiffs' counsel does not adduce affidavit testimony from Braman (or even advance an argument) that Braman would "correct" the portions of the deposition transcript relied on by Bertos in his memorandum of law in chief.

Third, even if the Court were to exclude the relevant portions of Plaintiff Braman's deposition transcript, it would still conclude that the record is devoid of admissible record evidence from which a rational fact-finder could conclude that Defendant Bertos, who was focused on subduing Johnson at the time excessive force was allegedly used by Ashe, had a realistic opportunity to prevent it. Plaintiff Braman's affidavit merely asserts that Defendant Bertos was "present" as she was "dragged . . . across the road." (Dkt. No. 37, Attach. 3, at ¶ 4 [Plf. Braman's Affid.].) Such presence is not a realistic opportunity to intervene, nor is it even knowledge of the alleged use of excessive force. This is especially true where, as here, the "presen[ce]" was Defendant Bertos' location *across the road* from the alleged use of excessive force, which was relatively sudden[18] and was coupled with Bertos' engagement in another endeavor. While Plaintiff Braman may be angry at Defendant Bertos for stopping Johnson, disrespectfully refusing to take his driver's license, speaking to him condescendingly, asking to search his vehicle, incorrectly stating that its interior smelled like marijuana, and telling John to get out of the vehicle, such actions do not somehow confer on Bertos knowledge of excessive force and a realistic opportunity to intervene in it. (*Id.*)

---

[18] The Court notes that, according to Plaintiff Braman's own version of events, the use of force against Plaintiff Johnson came without warning and was immediately followed by her exiting the vehicle, asking "Why is this happening?" and being grabbed, slammed to the ground and dragged across the road. (Dkt. No. 37, Attach. 3, at ¶ 3 [Plf. Braman Affid.].)

For all of these reasons, Defendant Bertos' first motion for summary judgment is granted, and all claims asserted by Plaintiff Braman against him are dismissed.

**B.      Defendant Bertos' Second Motion for Partial Summary Judgment**

After carefully considering the matter, the Court finds that Defendant Bertos' second motion for summary judgment should be granted for each of the reasons stated in his memorandum of law and reply affidavit, the Court's prior summary of which is hereby incorporated by reference in this part of its decision.  *See, supra,* Part I.B.2. of this Decision and Order.  To those reasons, the Court adds the following two points, which are intended to supplement and not supplant Defendant Bertos' reasons.

First, by failing to address Plaintiff A.J.'s claims against Defendant Bertos in their opposition memorandum of law, Plaintiffs have lightened Defendant Bertos' burden on that portion of his second motion for summary judgment that challenges A.J.'s claims against him such that, in order to succeed on his challenges, he need only show that his challenges possess facial merit.  *See, supra,* Part II.B. of this Decision and Order.  The Court finds that he has met that modest threshold burden for the reasons stated in Defendant Bertos' papers.

Second, as the Court stated in its third point above in Part III.A. of this Decision and Order, at the time excessive force was allegedly used by Defendant Ashe against Plaintiff Braman (which prompted Plaintiff A.J.J. to get out of the vehicle), Defendant Bertos was focused on subduing Plaintiff Johnson.  No admissible evidence has been adduced that, during the second or seconds that elapsed between when Plaintiff A.J.J. got out of the vehicle and another police officer used force against her, Defendant Bertos' focus shifted or could realistically have shifted to A.J.J.  Plaintiffs base A.J.J.'s claim against Defendant Bertos on the fact that he was "present on [the] scene at or near the location where [the use of force] occurred."

(Dkt. No. 51, Attach. 2, at 8 [attaching page "5" of Plfs.' Opp'n Memo. of Law].)  Again, such presence is not a realistic opportunity to intervene.  The Court notes that Defendant Bertos' asserted "presen[ce]" was not even at the alleged use of force in question (as it was with the alleged use of force against Plaintiff Braman) but "on [the] scene at or near the location where [the use of force] occurred."

For all of these reasons, Defendant Bertos' second motion for summary judgment is granted, and all claims asserted by Plaintiffs A.J.J. and A.J. against him are dismissed.

### C.     Remaining Defendants' Motion for Summary Judgment

After carefully considering the matter, the Court finds that the Remaining Defendants' motion for summary judgment should be granted in part for all of the reasons stated in their memoranda of law (the Court's prior summary of which is hereby incorporated by reference in this part of its decision), except (1) their qualified immunity argument (which the Court rejects with regard to Plaintiff Johnson's Fourth Amendment excessive force claim against Defendants Laviano, Clements and Ashe, and Plaintiff Braman's Fourth Amendment excessive force claim against Defendant Ashe), and (2) their lack-of-favorable-termination argument (which the Court also rejects with regard to Plaintiff Johnson's Fourth Amendment malicious-prosecution claim).  *See, supra,* Part I.B.3. of this Decision and Order.  The Court accepts all of the other arguments asserted by the Remaining Defendants.  To that analysis, the Court adds the following four points, which are intended to supplement and not supplant the reasons asserted in the Remaining Defendants' memoranda of law.

First, the Court agrees with the Remaining Defendants' argument that various of Plaintiffs' claims must be dismissed due to those Defendants' challenge to those claims in their memorandum of law in chief and Plaintiffs' failure to oppose those challenges in their opposition

memorandum of law. The Court notes that it finds that the challenges in question each were supported by facial merit (at the very least). *See, supra,* Part II.B. of this Decision and Order

Second, while at first glance the Remaining Defendants' challenge to the claims of excessive force and unlawful imprisonment asserted by Plaintiffs A.J.J. and A.J. may appear to be late-blossoming (occurring for the first time in their reply memorandum of law), upon closer examination it is clear that the challenges were sufficiently presented in the qualified immunity argument asserted in their memorandum of law in chief, and that it took sharper focus only after the Remaining Defendants received Plaintiffs' opposition papers. In any event, the Court possesses, and hereby exercises, the discretion to consider the challenges.[19] Plaintiffs were sufficiently on notice of these arguments, and had an adequate opportunity to oppose them. Moreover, the Court notes that there is no admissible record evidence that anyone but a bald officer not in uniform handcuffed A.J.J. and placed her in a patrol car, and that none of the Remaining Defendants was a bald officer not in uniform during the time in question.

Third, the Court finds that probable cause existed to arrest and prosecute Plaintiff Johnson for one of more of the following offenses: (1) Unreasonable Speed in violation of N.Y. Vehicle and Traffic Law § 1180(a),(e); (2) Obstructing Governmental Administration in the Second Degree in violation of N.Y. Penal Law § 195.05; (3) Resisting Arrest in violation of N.Y. Penal Law § 205.30; and/or (4) Criminal Possession of a Weapon in the Fourth Degree in violation of N.Y. Penal Law § 265.01(1).

---

[19]    *See Ruggiero v. Warner-Lambert Co.*, 424 F.3d 249, 252 (2d Cir. 2005) ("[S]he argues that the issue was first raised in Defendants' summary-judgment reply papers. . . . Assuming that is so, the district court had discretion to consider it."); *Bayway Ref. v. Oxygenated Mktg. & Trading*, 215 F.3d 219, 226 (2d Cir. 2000) (reviewing for abuse of discretion district court's decision to rely on evidence submitted with moving party's reply papers).

Fourth, the Court also finds that probable cause existed to arrest and prosecute Plaintiff Braman for one or more of the following offenses: (1) Resisting Arrest in violation of N.Y. Penal Law § 205.30; (2) Criminal Possession of a Controlled Substance in the Third Degree in violation of N.Y. Penal Law § 220.16; (3) Criminal Possession of a Controlled Substance in the Seventh Degree in violation of N.Y. Penal Law § 220.03; and (4) Possession of Controlled Substances by Ultimate Users Original Container in violation of N.Y. Public Health Law § 33.45.

With regard to the Resisting Arrest charge against Plaintiff Braman, it is undisputed that, at the time Defendant Bertos and Ashe were attempting to take actions constituting a lawful arrest of Defendant Johnson (for Unreasonable Speed, Obstructing Governmental Administration and/or Resisting Arrest), Plaintiff attempted to interfere with that arrest.[20] The Court understands that Plaintiff Braman did not agree with(1) Defendant Bertos' belief that Plaintiff Johnson appeared agitated after being stopped for driving at excessive speed, (2) Bertos' instruction that Johnson exit the vehicle and place his hands on the vehicle, and (3) Bertos' perception that Johnson was not sufficiently complying with that instruction (or that Bertos' instruction or Johnson's initial attempt to restrain Johnson's hands was unwarranted). However, that disagreement did not render unlawful the subsequent instruction given to her (by either Bertos or Ashe) to "[G]et back in the vehicle" as a part of the lawful traffic stop. (Dkt. No. 43,

---

[20] The Court notes that Plaintiffs argue that, when Braman exited the vehicle, she "expressed concern without physical provocation," citing page 2 of Braman's affidavit. (Dkt. No. 54, Attach. 5, at 10 [attaching page "6" of Plfs.' Opp'n Memo. of Law].) Setting aside the fact that force or violence is not necessary to resist an arrest, the page cited by Plaintiffs does not state that Braman did not initiate or attempt to initiate physical contact with Ashe or Bertos, that she did not position herself between Ashe and/or Bertos and the desired object of their attention (Johnson), or that she did not attempt to distract Ashe and/or Bertos from effecting an arrest of Johnson so that he could evade it. (Dkt. No. 54, Attach. 1, at 2.) Under the circumstances, the Court finds this omission to be conspicuous.

Attach. 18, at 20, 30 [attaching pages "19" and "30" of Plf. Braman's Depo. Tr.].)  As a result,

Plaintiff Braman's refusal to do so, coupled with her physical presence so close to the arrest of

Defendant Johnson and her distraction of Defendant Ashe from that arrest, gave the Remaining

Defendants knowledge (or reasonably trustworthy information sufficient to warrant a person of

reasonable caution to believe) that Braman was intentionally preventing, or attempting to

prevent, Defendants Bertos and/or Ashe from effecting an authorized arrest of Defendant

Johnson.[21]

In any event, the Court has found that the criminal proceedings against Plaintiff Braman

did not terminate in her favor.  *See, supra,* Parts III.A. and I.B.1. of this Decision and Order.

For all of these reasons, the Remaining Defendants motion for summary judgment is

granted in part and denied in part.  Surviving the Court's decision of the Remaining Defendants'

motion (due to the concession made by the Remaining Defendants, with whom the Court agrees)

are (1) the excessive force claim asserted by Plaintiff Johnson against Defendants Laviano,

Clements and Ashe, and (2) the excessive force claim asserted by Plaintiff Braman against

Defendant Ashe.

---

[21]     Because the Court need not do so, it does not reach the close issue of whether, in
the alternative, probable cause existed to arrest and charge Plaintiff Braman with Obstructing
Governmental Administration and/or Harassment in the Second Degree.  Under N.Y. Penal Law
§ 195.05, "A person is guilty of obstructing governmental administration when he intentionally
obstructs, impairs or perverts the administration of law or other governmental function or
prevents or attempts to prevent a public servant from performing an official function, by means
of [physical] intimidation, physical force or [physical] interference . . . ." N.Y. Penal Law §
195.05.  Under N.Y. Penal Law § 240.26(1), "[a] person is guilty of harassment in the second
degree when, with intent to harass, annoy or alarm another person: (1) [h]e or she strikes, shoves,
kicks or otherwise subjects such other person to physical contact, or attempts or threatens to do
the same; or (2) [h]e or she follows a person in or about a public place or places; or (3) [h]e or
she engages in a course of conduct or repeatedly commits acts which alarm or seriously annoy
such other person and which serve no legitimate purpose."  N.Y. Penal Law § 240.26(1).  The
fact that neither charge was ever actually made is, of course, immaterial to a probable cause
determination.

**D.	Other Claims Surviving Defendants' Motions**

Also surviving the Court's decision of Defendants' motions (due to the fact that they were not challenged in Defendant Bertos' motions) are the following claims by Plaintiff Johnson against Defendant Bertos: (1) a claim that Defendant Bertos subjected Plaintiff Johnson to excessive force in violation of his rights under the Fourth Amendment; (2) a claim that Defendant Bertos subjected Plaintiff Johnson to malicious prosecution in violation of their rights under the Fourth Amendment; (3) a claim that Defendant Bertos subjected Plaintiff Johnson to unlawful arrest in violation of their rights under the Fourth Amendment; (4) a claim that Defendant Bertos subjected Plaintiff Johnson to unlawful imprisonment in violation of their rights under the Fourth Amendment; and (5) a claim that Defendant Bertos denied Plaintiff Johnson substantive due process in violation of their rights under the Fifth and Fourteenth Amendments.

With regard to Plaintiff Johnson's fourth above-listed claim, Plaintiffs' counsel is respectfully reminded of his obligation under Fed. R. Civ. P. 11 to not continue to pursue claims that he has learned (and indeed conceded) are duplicative of each other (specifically, an unlawful imprisonment together with an unlawful arrest claim). *See, e.g., Corsini v. Bloomberg*, 26 F. Supp.2d 230, 248 (S.D.N.Y. 2014) ("Plaintiff has doggedly pursued his claims even after he was instructed that they were meritless, and when he should have known that they were barred by the doctrine of res judicata. Plaintiff, as an attorney, cannot claim ignorance of Rule 11's prohibition against duplicative litigation.").

A similar reminder may be appropriate with regard to Plaintiff Johnson's second, third and fifth above-listed claims. With regard to Plaintiff Johnson's second and third above-listed claims, the Court has already concluded that, based on the current record, it is undisputed that

probable cause existed to arrest and prosecute Plaintiff Johnson for Unreasonable Speed, Obstructing Governmental Administration in the Second Degree, Resisting Arrest and/or Criminal Possession of a Weapon in the Fourth Degree. *See, supra,* Part III.C. of this Decision and Order.

With regard to Plaintiff Johnson's fifth above-listed claim, without prejudging the matter, the Court notes that it has trouble conceiving of the precise constitutional right that is allegedly at stake for purposes of Plaintiff Johnson's substantive due process claim against Defendant Bertos. Plaintiffs' counsel is respectfully reminded that (as Defendants argue) a substantive due process claim may not be maintained where the alleged misconduct is covered by another constitutional provision. As the Supreme Court has repeatedly held, "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth . . . Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the [more generalized notion] of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272, n.7 (1997) (citing *Graham v. Connor*, 490 U.S. 386, 392-94 [1989]); *see also Conn v. Gabbert*, 526 U.S. 286, 293 (1999) (offering similar recitation of law before refusing to analyze claim of improper search under Fourteenth Amendment); *accord, Kia P. v. McIntyre*, 235 F.3d 749, 757-58 (2d Cir. 2000).

Of course, a stipulation of dismissal of these four claims pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii) would obviate the need for the filing of a third motion for partial summary judgment by Defendant Bertos, and expedite a trial on Plaintiff Johnson's remaining claim (of excessive force) against Defendant Bertos.

**ACCORDINGLY**, it is

**ORDERED** that Defendant Bertos' first motion for partial summary judgment (Dkt. No. 34) is **GRANTED**, and the claims asserted by Plaintiff Braman against him are **DISMISSED**; and it is further

**ORDERED** that Defendant Bertos' second motion for partial summary judgment (Dkt. No. 41) is **GRANTED**, and the claims asserted by Plaintiffs A.J.J. and A.J. against him are **DISMISSED**; and it is further

**ORDERED** that the remaining Defendants' motion for summary judgment (Dkt. No. 43) is **GRANTED in part** and **DENIED in part**, as set forth above in Part III.C. of this Decision and Order; and it is further

**ORDERED** that **SURVIVING** Defendants' motions are the following claims:

(1) all of Plaintiff Johnson's claims against Defendant Bertos;

(2) Plaintiff Johnson's Fourth Amendment excessive force claim against Defendants Laviano, Clements and Ashe; and

(3) Plaintiff Braman's Fourth Amendment excessive force claim against Defendant Ashe.

**ORDERED** that counsel are directed to appear on **OCTOBER 26, 2016** at 11:00 a.m. in Syracuse, NY for a pretrial conference, at which counsel are directed to appear with settlement authority, and in the event that the case does not settle, trial will be scheduled at that time. Plaintiffs are further directed to forward a written settlement demand to defendants no later than **OCTOBER 5, 2016**, and the parties are directed to engage in meaningful settlement negotiations prior to the conference. In the event that counsel feel settlement is unlikely,

counsel may request to participate via telephone conference for the limited purpose of scheduling a trial date by electronically filing a letter request at least one week prior to the scheduled conference.

Dated: September 20, 2016
        Syracuse, New York

                           Hon. Glenn T. Suddaby
                           Chief U.S. District Judge